Good morning. Thank you for your recognition, counsel. Members of the court, I'm here this morning on behalf of Mr. Hanapel to request that you reverse his conviction, remand the case back to the district court with orders that the judgment of acquittal be granted. It's our position that the record clearly shows that government agents in this sting operation enticed Mr. Hanapel to act and that the record also clearly shows that he was not predisposed into attempting to talk underage females into engaging in illegal activities. The court has seen many of these cases, of course. It starts with the law enforcement agents coming together. They set up an undercover sting operation. They establish personas. They have backstories. They have photos. Case law and rules from Congress are clear. Agents are able to engage in this type of subterfuge. They're able to present the opportunity for people to commit the crime. However, law enforcement is not to cross the line into the area of entrapment. And our position is that is what occurred here. We have initially the undercover operation occurring on an app. I think it's frequently called, probably the best way to say it, is a sexual hookup site. Agents have their ad posted here. Mr. Hanapel reaches out to the undercover persona and fairly short order, or within fairly short order, the conversation switches over to texting. The persona explains fairly early on that she's only 14. And this is where Mr. Hanapel says, yo, I can't talk to you and you shouldn't be on dating apps until you become 18. We can be friends and nothing more. And, of course, the court has the opportunity to engage in this type of subterfuge. So what happened next? What were the next messages? This is where the agent comes in, and it's our position, coyly, or using coded language essentially, says, okay, sorry, I understand. Guys my age are pretty lame, and you going. Now, there isn't an overt request from sex from the undercover persona, but what's going on is that coyness or that, what's talked about in Myers, that precociousness in order to keep the discussion going. And so, of course, as we continue on, it's our position that the evidence clearly shows that Mr. Hanapel continues to discuss reluctance with meeting. Now, this particular series of, or this conversation that's taking place via computer or phone, it's really not all that uncommon. I mean, listen, I've tried a bunch of these cases, presided over a bunch of them, sentenced a whole bunch of people. And there's an awful lot of the, hey, I'm 14 or I'm 13, and then there's two young, two young, two young. And then the conversation goes back to a let's be friends kind of conversation, then goes from let's be friends to something more sexual. And really, usually we look at, well, who introduces sexuality into the conversation? And we look at the timing, right? And so, if you look at cases where entrapment kind of works, usually it takes place over a long period of time. But, you know, we're getting to just the very next day that conversation tends to point towards sexuality, and the defendant's very much involved in the turning of that conversation, which, you know, I can just tell you as the old trial judge, you look at that and you sit there and you say, well, that kind of is evidence of predisposition. And so, if you think of entrapment having only two elements, and the inducement piece is never the piece that we're arguing about. The part we always argue about is there the predisposition. Why isn't that sufficient evidence of predisposition to sustain the conviction? Sure. So, as I understand your question, for example, in United States v. Polman, if I'm pronouncing that correctly, cited with approval by this Court in Myers, there I think there was perhaps six months of e-mails between the undercover agent and then the defendant. And sometimes there's sort of kind of pressure being applied by the agent. Like the agent says, you know, you're toying with me, you dumped me, you're doing all this stuff, and it's not fair, you know. But that's not our situation here. It isn't. And the position that I would advance is this. You don't need six months or the two and a half years that the United States Supreme Court found. You can induce somebody very quickly. You can entice someone very quickly. It's ironic, maybe it's not ironic, but the term is used both in the elements of the offense against Mr. Hannibal, the inducement, and then, of course, also with entrapment. My position is you can induce and entice a 20-year-old pretty quickly with a photograph, and that's really what we're coming to here. There's no requirement by the Supreme Court or this Court that there has to be a specific time limit. Really the issue is, is it clear that enticement's going on? And when you have the undercover playing the position of the coy, precocious 14-year-old, and you see these challenges, like I can't go out for ice cream, I'm paraphrasing, of course, my parents are gone. I have to be careful who I choose tonight so I can make the most of it. That's the type of challenge. That's the subtle psychological pressure that's going on that can really meet that element of inducement, even though it didn't take six months or six days. And I might be getting off your question slightly, but I think it's relevant. It's not just the psychological pressure. It's also that being indecisive. And so when that gets sent, that's another issue of inducement. And so really then, I suppose we could phrase it this way. We have a number of cases, as you've pointed out, where people seem to jump at the chance. I think that Myers would be a good example of that, where the Court, and I'm wanting to get the quotation exactly right, but I believe it starts with one searches the record in vain, looking for a point when Mr. Myers was the least bit hesitant about asking for nude photographs or asking for the meeting with the undercover in that matter. Here we have on the record, I'll respectfully submit, in black and white, that hesitancy that wasn't there in Myers. And when we look at both of those elements, they are the same. The level of inducement has to overcome that hesitancy, and I think that that's what occurred here. I apologize. That might be quite a long answer to your question. It was a long, rambling question, so it required a long answer. I think the key to understanding this case, or at least as I would submit it, the issue here, when we look at predisposition, I don't believe is the question is, is a 20-year-old predisposed to wanting to have some kind of a relationship with an attractive woman? The question is, is he predisposed to wanting to commit the crime of the solicitation, trying to, is he predisposed to trying to talk or persuade the 14-year-old into engaging in the Illegal Sex Act? Mr. Hannipol did not immediately and enthusiastically avail himself to the first opportunity that he had here to be able to do that. Rather, it took government prompting, and so that's why this case does look significantly different than many of the other cases that you were referencing earlier. Now, this is kind of a natural stopping point for me. I don't necessarily intend to use all my time in rebuttal, so, but if there are no further questions at this point, I will yield the floor to the United States. Very well. You can, you may reserve the balance and use what is appropriate. Thank you. Mr. Coloner, we'll hear from you. May it please the Court. My friend and colleague, Mr. Gray. I'm Kevin Coloner from the United States, from the District, from the U.S. Attorney's Office in South Dakota. We're here asking that this conviction be affirmed. We just heard discussion of coy language, coded language, precociousness. That may all be true, but this Court's cases talk about coercion and manipulation, and this certainly just doesn't rise to that sort of level. What we have is the officer talked about at length in his testimony that he's been trained and he did so here, and, of course, the Court will look in detail at these text messages. He rose to the level that the defendant took the conversation at every step of the way. There's the Myers factors, who contacted whom. Well, the defendant contacted the undercover. Who brought up sex? The defendant was the first one to bring up sex. In fact, you know, of course, we have the, what I think is the smoking gun statement is, you know, why am I the one making all the decisions here, right? That's what the undercover, if this was manipulation, Mr. Hannapelt certainly didn't feel manipulated. He was the one asking, you know, what do you exactly mean here? Do you mean sex? Of course, do you want to F? He's asking that question because it's unclear to him. So you certainly can't have, you know, coercion when the defendant isn't even clear about, you know, what the undercover is hinting at. Of course, we're in the realm here because this was a properly instructed entrapment case. There's no dispute about the instruction. There's no dispute about the fact that there was no dispute from the government. There should be an entrapment discussion. So we're in this realm where we're casting all reasonable inferences in favor of the verdict. And they're really just, of course, this Court has also been clear that when there's a conflict in the law or a conflict in the facts on these entrapment facts, it's in Myers, that the verdict stands. So even at best, if there is some conflict between, you know, between the facts on this second persuasion element of entrapment, the verdict must stand. I have quite a bit of time here. I don't have a whole lot more to say because I think this is a pretty clear record. It's a pretty straightforward case in terms of this Court's jurisprudence on these very same sorts of cases. You look at Myers, you look at Zupnik, you look at Tobar, Joyner, some cases that we've discussed. This is right in line with them. There's really nothing out of the ordinary as far as I see it. But I'd certainly be willing to answer any of the Court's questions. Remind me, did Judge Viken comment on this issue when the instruction was allowed or post-trial? On the issue of whether the evidence was close. Well, there was a Rule 29 motion, and he ruled on that. And it was a pretty brief discussion on the entrapment issue, him finding that  there was sufficient evidence that a jury could have found entrapment. Well, certainly in the sense, yeah, right, in the sense that he gave the instruction. And so I think that's a part. Did the government object to the entrapment instruction? No. It was a central, it was the central issue in this case. I mean, that's the other thing in terms of did the jury consider this factually? The government raised it in its opening. You know, this case is about entrapment. This is what we're focused on. All the questions really were focused on whether or not he was entrapped. That was the focus of the closings. So in terms of, you know, entrapment generally being a jury issue, perfect example here. It was really the only jury issue. And, of course, now it's the only issue on appeal. So we have a robust record on all the things that the jury considered. And the elements, as the judge gave them, were quite favorable to the defense, if you look at it. Because, I mean, if you look at the first element that the judge gave in his instruction, it was that Mr. Hannepel was willing to solicit a minor before he was approached or by law enforcement or some other person acting on behalf of the government. So if you look at a predisposition, the instruction didn't just say merely predisposed. It just said, no, you're willing to solicit a minor before the government even comes up. That's the first opportunity. And that element was argued to the jury? Yeah. It was argued by the defense. That's the hardware defense. I'm assuming it was argued, right? And so you're saying is that, however we view this evidence, and on the question of predisposition, there is, well, there hardly ever is direct evidence. I was going to say there never is, but I can envision a world where there might be. But there's none here. So at this point, it is just do the circumstances and basically the chats themselves. Do they give rise to a reasonable inference on the part of the jury that there was a willingness to solicit? It even could no reasonable jury find otherwise, essentially, based on these facts. Well, based on the standard of review, right? Right. So to your question, yeah. I think the Court used the model instruction, which has that first part, which, frankly, is never going to be really part of one of these Sting cases because the government is setting up, you know, the profile here. Zupnick's was a little different. Zupnick set up his own ad, and then the government responded to it. But most of these cases, it's going to be awfully hard if the government's got to prove that someone was looking for a minor because they've got to set up the profile, and they've got to set it up showing they were 18, right, to keep it up. So you're right. We very rarely see the government's evidence coming down on that first prong of entrapment. It's mostly on the second, and that's what we have here. Very well. Thank you. Thank you for your argument. Mr. Gray, we'll hear rebuttal. I think that maybe it's important to not only clarify what the defense is asking for in this matter, but to clarify what we're not asking for. We're certainly not asking this Court to come in and to micromanage or tell law enforcement how to do their job when it comes to these investigations. However, under the law of entrapment, there needs to be a careful balance that's struck on how these investigations are done. In a case like this, where law enforcement has everything set up, they've got the backstory, they've got the photographs ready to go, and when they're starting to tell someone what their age is for that persona, and the person they're talking to expresses that hesitancy and says, we can be friends, nothing more, law enforcement should be very careful about the next steps that they take. When someone still shows hesitancy and has not asked for a photograph of a young woman in a sports bra, law enforcement should be very careful about sending that unsolicited photograph because they could wind up into an entrapment situation. Now, perhaps it's hard for the government to prove these cases. That's the burden that's on them at trial. But what this really, I think, could be crystallized by is if we look at United States v. Joyner, a case that Mr. Colliner just pointed out. In that particular case, their law enforcement has the ad put out. Sounds a little bit suspicious, I suppose. It's called Skip the Games. And there the undercover has posted the ad about what kinds of sexual activities are available. The defendant in that case reaches out. There's a discussion, and he talks about, well, maybe you could come over and clean my place. And this is what he says after he finds out about the undercover, I'm sorry, the persona's age. And this court noted that both sides were uneasy. No side was really pressing things very hard forward. And when the undercover persona was backing up and not pushing hard, and the defendant in that case was talking, you know, what can we do, the undercover says, look at my ad, look at what I posted that we do, as opposed to sending photos or playing coy. My position is from a policy standpoint, that's a much better approach for law enforcement to take, to really let the defendant take the lead, so to speak, as opposed to when someone says we can be friends and nothing more, law enforcement continues the pursuit, including sending that unsolicited photograph. I would like to address the Meyer factors at least briefly. And I realize, of course, that when the court put those forward, they were not meant to be an exhaustive list or that they have to apply it in a rigid fashion in every case. And looking at that first factor, well, it's certainly true that Mr. Hannibal clicked on the undercover persona first, at the time that he clicked on it, he didn't know what the persona's age was ultimately going to be. That came up later. So I don't know that that factor is terribly important to the decision here when we're looking at the issue of inducement. Who brought up the issue of sex first? Sometimes in these cases, it's very clear, it's black and white. I submit in this particular case, it really isn't. When we go through and look at the coy messages, when we look at that precociousness, it looks like there's a challenge coming forward, and we know that the persona was on a sexual hookup site to begin with. So I don't know that that's quite as clear as we might ordinarily hope that it might be. And then in Myers, of course, the other factor was, what was the impact of the photo that was sent? In this particular case, after that photo gets sent, then we start to see Mr. Hannibal taking a different position. It starts to see that, I'm sorry, what we start to see is that hesitancy is breaking down. And so ultimately, I would recommend, or I would suggest that the Hannibal, I'm sorry, that the Myers factors really do show that enticement occurred in this particular case. And so then we come back to the issue, well, is he predisposed? Well, what other evidence is there in the record that he was? He didn't immediately and purposefully avail himself at the first opportunity that he had. There's no evidence that he's out there saying, gosh, I've been on this adult website, and now I'm so glad that I have found someone who's underage. These cases, in some instances, may be difficult to prove. Perhaps they're not difficult to prove, depending upon how the facts come in. But it's our position under the law, Mr. Hannibal clearly was enticed by the government and clearly did not have a predisposition to committing this crime. And it's for those reasons we would ask the Court to reverse. Thank you. Very well. Thank you for your argument, and thank you for accepting the appointment in this case. Thank you. Thank you to both counsel. The case is submitted. The Court will file a decision in due course. That concludes the argument calendar for this morning and for the week. The Court will be in recess until further call at the docket.